Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Lesley E. Weaver (State Bar No. 191305)
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Peter Safirstein
**MORGAN & MORGAN, P.C.**
28 W. 44th St., Suite 2001
New York, NY 10036
Telephone: (212) 564-1637
Facsimile: (212) 564-1807
Email: psafirstein@MorganSecLaw.com

Attorneys for Plaintiff

FILED
APR 23 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SBA

| | |
|---|---|
| BRIAN BLAND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIFONE SYSTEMS, INC., DOUGLAS G. BERGERON, ROBERT DYKES, and MARC E. ROTHMAN,<br><br>Defendants. | CV Case No.: 13 1853<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>FAXED |



00080363.000.docx

Brian Bland ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by VeriFone Systems, Inc. ("VeriFone" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by VeriFone; and (c) review of other publicly available information concerning VeriFone.

## SUMMARY OF THE ACTION

1. This is a federal class action on behalf of all persons who purchased or otherwise acquired the common stock of VeriFone between December 14, 2011 and February 20, 2013, inclusive (the "Class Period"), for violations of the Securities Exchange Act of 1934 (the "Exchange Act).

2. VeriFone is a global provider of payment solutions that enable secure electronic payment transactions and value-added services at the point of sale ("POS"). The Company provides payment solutions at the POS via merchant-operated, consumer-facing, and self-service systems for, among others, the financial, retail, hospitality, petroleum, transportation, government, and healthcare markets. The Company is incorporated in Delaware and headquartered in San Jose, California.

3. During the Class Period, VeriFone portrayed the Company as achieving steady and consistent growth, beating analysts' forecasts for each quarter for more than two years.

4. Unbeknownst to the investing public however, VeriFone did not properly execute its plan to move to a more subscriptions-based service model, was using past acquisitions to mask its declining revenue base, and was inappropriately recognizing revenues in periods where they should have been deferred.

5. On April 30, 2012, Deutsche Bank issued a detailed research report asserting for the first time that VeriFone was inflating its organic growth through acquisitions by treating as "organic growth" VeriFone sales to legacy customers of a company known as Hypercom Corp.

("Hypercom") and possibly to customers of other acquired companies. In reality, such sales simply cannibalized millions of dollars in Hypercom product sales and did not constitute organic growth. This disclosure caused the price of VeriFone stock to drop from $54.44 per share on April 27, 2012, to $47.64 per share on April 30, 2012, or over 12%.

6. On February 4, 2013, the Company issued a press release announcing the retirement of its then-CFO, Defendant Robert Dykes, as well as its Vice Chairman, Ellmore (Bud) Waller. Defendant Marc E. Rothman was named as the Company's new CFO. On this news, the price of VeriFone stock declined $0.87 per share or nearly 2.5%, to close at $34.37 per share.

7. Then, on February 20, 2013, the Company announced its preliminary financial results for the first fiscal quarter ended January 31, 2013. VeriFone reported that it expected its first quarter non-GAAP net income to be between $0.47 and $0.50 per share and GAAP net income to be between $0.07 and $0.10 per share on revenue of $424 million, falling well below analysts' profit forecast of $0.73 per share on revenue of $492 million. VeriFone attributed these lower than expected results to several factors, including weak macro-economic conditions in Europe and an increase in deferred revenue related to volume shipments to customers in the Middle East and Africa that did not meet first quarter revenue recognition requirements.

8. On this news, VeriFone's share price plummeted, dropping to $13.65 per share or nearly 43%, to a closing price of $18.24 per share on February 21, 2013.

9. The Company and the Individual Defendants (defined herein) made materially misleading statements, and/or failed to disclose information necessary to make various statements not materially misleading. As a result, the VeriFone shares were sold at artificially inflated price.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

11. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

12. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). VeriFone's headquarters are located within this District, VeriFone conducts substantial business in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

13. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

14. Plaintiff Brian Bland as set forth in the accompanying certification, purchased VeriFone common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and misleading statements and/or material omissions alleged herein.

15. Defendant VeriFone is incorporated in Delaware and headquartered at 2099 Gateway Place, Suite 600, San Jose, California 95110. Throughout the Class Period, the Company traded in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "PAY."

16. Defendant Douglas G. Bergeron ("Bergeron") was, at all relevant times, the Company's Chief Executive Officer as well as a member of the Company's Board of Directors. Bergeron resigned from the Company on March 11, 2013, after the end of the Class Period.

17. Defendant Robert Dykes ("Dykes") was the Company's Chief Financial Officer ("CFO") and Executive Vice President between September 2008 and February 2013.

18. Defendant Marc E. Rothman ("Rothman") has been the Company's Executive Vice President and CFO since February 4, 2013.

19. Defendants Bergeron, Dykes, and Rothman are referred to herein as the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20. VeriFone is a global provider of payment solutions that enable secure electronic payment transactions and value-added services at the point of sale ("POS"). The Company provides payment solutions at the POS via merchant-operated, consumer-facing, and self-service systems for, among others, the financial, retail, hospitality, petroleum, transportation, government, and healthcare markets. The Company offers a variety of hardware, software and security products, solutions and services in an integrated platform that consolidate consumer engagement programs, assets, and payment processing into a single point of access. These offerings allow merchants to predict and contain costs as well as manage payments, loyalty programs and promotions, while facilitating analysis of channels, initiatives and provisioning management.

### False and Misleading Statements

21. On December 14, 2011, the Company reported financial and operating results for the fourth quarter and fiscal year ending October 31, 2011. For the quarter, the Company announced net income of $199 million, or $1.84 diluted earnings per share ("EPS") and net revenue of $411 million, compared to net income of $49 million, or $0.55 diluted EPS and net revenue of $276 million for the same period the year prior. For the year, the Company announced net income of $282 million or $2.92 diluted EPS and net revenue of $1.3 billion, compared to net income of $99 million, or $1.13 diluted EPS and net revalue of$1 billion for the same period the year before.

22. On December 23, 2011, the Company filed an annual report for the year ending October 31, 2011 in a Form 10-K with the SEC, that was signed by, among others, Defendants Bergeron and Dykes, and repeated the Company's previously reported financial results. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

23. On March 5, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ending January 31, 2012. For the quarter, the Company announced a net loss of $3 million, or ($0.03) diluted EPS and net revenue of $420 million, compared to net income of $32 million, or $0.35 diluted EPS and net revenue of $284 million for the same period the year prior.

24. On March 12, 2012, the Company filed its quarterly report for the period ended January 31, 2012 in a Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and repeated the Company's previously announced quarterly financial results. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

25. On April 30, 2012, Deutsche Bank published a comprehensive analyst report explaining that VeriFone was inflating its organic growth through acquisitions by treating as "organic growth" VeriFone sales to legacy Hypercom customers (and possibly customers of other acquired companies). In reality, such sales simply cannibalized tens of millions of dollars in Hypercom product sales. Indeed, Deutsche Bank calculated that VeriFone's true rate of organic growth was negative .1% year-over-year, and would be approximately 4%-6% going forward. Given VeriFone's poor financial disclosures and overstated growth, Deutsche Bank cut its rating on the stock to sell.

26. Also on April 30, 2012, in response to Deutsche Bank's report, the Company assured investors regarding its calculation of organic growth, and reaffirmed its expectations for robust organic growth for fiscal year 2012 and long-term. Indeed, VeriFone issued a press release, which stated, in relevant part:

> VeriFone Systems. Inc. (NYSE: PAY), issued the following statement regarding a report on organic growth calculations that was disseminated this morning from Deutsche Bank.
>
> VeriFone uses a methodology of calculating organic growth prescribed by the vast majority of investors and Wall Street analysis: excluding revenue of all acquired companies, large and small, until 12 months after

acquisition.

> Deutsche Bank is choosing to include in its calculation the revenue of acquired companies as if VeriFone had owned them for the entire current and year-ago period. We believe this does not reflect the true organic results of VeriFone's business and we reaffirm our expectations for 10-15% organic growth rates tor fiscal year 2012 and long-term.

27. This disclosure caused the price of VeriFone stock to drop from $54.44 per share on April 27, 2012, to $47.64 per share on April 30, 2012, or over 12%.

28. On May 24, 2012, VeriFone issued a press release reporting its financial and operating results for the quarter ended April 30, 2012. For the quarter, the Company reported net income of $15 million, or $0.13 diluted EPS and net revenue of$472 million, compared to net income of $25 million, or $0.27 diluted EPS and net revenue of $292 million for the same period the year prior.

29. On June 11, 2012, the Company filed a quarterly report for the period ended April 30, 2012 on Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and repeated the Company's previously announced quarterly financial results. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

30. On September 5, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ended July 31, 2012. For the quarter, the Company reported net income of $38 million, or $0.34 diluted EPS and net revenue of $489 million, compared to net income of $26 million, or $0.28 diluted EPS and net revenue of $317 million for the same period the year prior.

31. On September 10, 2012, the Company filed a quarterly report for the period ended July 31, 2012 on Form 10-Q with the SEC which was signed by Defendants Bergeron and Dykes, and repeated the Company's previously reported quarterly financial results. In addition, the Form 10-0 contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and

disclosed all material changes to the Company's internal controls over financial reporting.

32. On December 13, 2012, the Company reported financial and operating results for the fourth quarter and fiscal year ended October 31, 2012. For the quarter, the Company announced net income of $27 million, or $0.24 diluted EPS and net revenue of $485 million, compared to net income of $199 million, or $1.84 diluted EPS and net revenue of $41 million for the same period the year prior. For the year, the Company announced net income of $65 million, or $0.59 diluted EPS and net revenue of $1.9 billion, compared to net income of $282 million or $2.92 diluted EPS and net revenue of $1.3 billion for the same period the year prior.

33. On December 19, 2012, the Company filed an annual report for the year ended October 31, 2012 on Form 10-K with the SEC, that was signed by, among others, Defendants Bergeron and Dykes, and repeated the Company's previously announced financial results. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

34. These statements made by the Defendants during the class period were materially false and misleading because Defendants misrepresented or failed to disclose material adverse facts about the Company's business, operations, and growth prospects including, among other things, that: (1) the Company did not properly execute its plan to move to a more subscriptions-based service model; (2) VeriFone used past acquisitions to mask its declining revenue base: (3) the Company inappropriately recognized revenues in periods where they should have been deferred; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

35. As a result of these material misstatements and omissions, VeriFone's common stock was offered at an artificially inflated price.

**THE TRUTH EMERGES**

36. On February 4, 2013, the Company issued a press release announcing the retirement of its then-CFO, Defendant Robert Dykes, as well as its Vice Chairman, Ellmore (Bud) Waller. Defendant Marc E. Rothman was named as the Company's new CFO. On this news, the price of VeriFone stock declined $0.87 per share or nearly 2.5%, to close at $34.37 per share.

37. Then, on February 20, 2013, after the market closed, the Company announced its preliminary financial results for the first fiscal quarter ended January 31, 2013. VeriFone reported that it expected its first quarter non-GAAP net income to be between $0.47 and $0.50 per share and GAAP net income to be between $0.07 and $0.10 per share on revenue of $424 million, falling well below analysts' profit forecast of $0.73 per share on revenue of $492 million. VeriFone attributed these lower than expected results to several factors, including weak macro-economic conditions in Europe and an increase in deferred revenue related to volume shipments to customers in the Middle East and Africa that did not meet first quarter revenue recognition requirements. The Company also announced updated disappointing revenue guidance of 435 million to $450 million for the second quarter of 2013. The press release stated, in pertinent part:

> VeriFone expects to report Ql non-GAAP net revenues in the range of $425 million to $430 million and Ql GAAP net revenues in the range of $424 million to $428 million. VeriFone expects to report non-GAAP net income per share between $0.47 and $0.50 and GAAP net income per share between $0.07 and $0.10.
>
> The lower than expected results for the first quarter were driven primarily by:
>
> - Continued weak macro-economic conditions in Europe;
> - Increased focus and investments throughout 2012 on longer-term service initiatives in multiple jurisdictions at the expense of near-term hardware and software features and customization projects that were reduced or delayed, which resulted in missed revenue opportunities;
> - An increase in deferred revenue related to volume shipments made during the quarter to a new mix of customers in the Middle East and Africa. These shipments did not meet first quarter revenue recognition requirements;

- Lower than anticipated revenue from large Brazilian customers, as well as political and economic uncertainty in Venezuela, typically a strong market for VeriFone; and
- Several customers electing to delay major projects beyond the first quarter, as well as the cancelled Washington, D.C. taxi project.

* * *

The company's updated outlook for the second quarter includes:

- Non-GAAP net revenues in the range of $435 million to $450 million;
- Non-GAAP net income per share in the range of$0.45 to $0.50;
- The company expects that non-GAAP net revenues and non- GAAP net income per share will grow sequentially in the third and fourth quarters of fiscal 2013.

38. Analysts were immediately concerned about the Company's disappointing results, expressing strong skepticism over the Company's explanation for its dismal performance. In fact, at least one analyst wrote that the recent CFO resignation, coupled with the first quarter revenue deferral could suggest accounting improprieties in prior quarters.

39. Reuters published a news article titled "VeriFone shares nearly halve, analysts query management" that stated, in pertinent part:

> VeriFone shares slid to $17.93, their lowest in nearly three years, and at least seven analysts cut their price targets on the stock. Deutsche Bank, in a client note, said the company had finally admitted it had failed to execute on its plans to move to a more subscription-based service model.
>
> Several analysts suggested that VeriFone's new chief financial officer had taken a more conservative accounting approach at the company, which already faces a court case for a past accusation of reckless accounting.
>
> * * *
>
> Deutsche, which rates the stock a "sell", slashed its price target to $15 from $27. The brokerage said past acquisitions had masked what was happening at the company and that it had long been wary of its "aggressive accounting recognition."
>
> "The recent CFO retirement/resignation and the first-quarter revenue recognition requirements could also suggest accounting red flags in prior quarters." Deutsche said, noting the latest quarter's accounts had been signed off by the new CFO.
>
> * * *
>
> Analysts on Thursday rejected the company's argument that its problems came from the weak economy. While macro conditions may have had an


00080363.000.docx

> impact on business in the quarter, the global economy has had far less of an impact on peers such as NCR Corp. and Micros Systems, said Wedbush analyst Gil Luria, who cut his price target to $22 from $33.

40. On this news, VeriFone's share price plummeted, dropping to $13.65 per share or nearly 43%, to a closing price of $18.24 per share on February 21, 2013.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of VeriFone between December 14, 2011 and February 20, 2013 and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. VeriFone has over 107 million shares of common stock issued and outstanding as of the close of business on December 7, 2012, and is owned by hundreds or thousands of people. Record owners and other members of the Class may be identified from records maintained by Facebook and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

a. Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. Whether the representations issued by VeriFone contained untrue statements of material facts or omitted to state material information;

c. Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d. Whether the price of VeriFone common stock was artificially inflated; and

e. To what extent the members of the Class have sustained damages and the proper measure of damages.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

48. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## LOSS CAUSATION

49. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

50. During the Class Period, Plaintiff and the Class purchased common stock of VeriFone at artificially inflated prices and were damaged thereby. The price of VeriFone common stock declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

51. As alleged herein, the Defendants acted with scienter in that Defendants knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of VeriFone were materially false and misleading; knew or recklessly disregarded, that such statements or documents would be issued or disseminated to the investing public; and knowingly participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Defendants, by virtue of their receipt of information reflecting the true condition of VeriFone's business operations and future prospects, their control over, and/or receipt and/or modification of VeriFone's allegedly materially misleading misstatements and/or their associations with VeriFone, which made them privy to confidential proprietary information concerning VeriFone, participated in the wrongful conduct alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE THROUGH FRAUD-ON-THE-MARKET DOCTRINE

52. At all relevant times, the market for VeriFone's common stock was an efficient market for the following reasons, among others: (a) VeriFone's stock met the requirements for listing, and was listed and actively traded on the NYSE, which is a highly efficient and automated market; (b) as a regulated issuer, VeriFone filed periodic public reports with the SEC and the NYSE; (c) VeriFone regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases

on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and (d) VeriFone was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace.

53. As a result of the foregoing, the market for VeriFone's common stock promptly digested current information regarding VeriFone from all publicly available sources and reflected such information in VeriFone's stock price. Under these circumstances, all purchasers of VeriFone's common stock during the Class Period suffered similar injury through their purchase of VeriFone's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

54. VeriFone's "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.

55. The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of VeriFone who knew that the FLS was false.

56. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent

on those historic or present tense statements when made.

**COUNT I**
**Violations of Section 10(b) of the Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**

57. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

58. During the Class Period, the Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase VeriFone's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, both collectively and individually, took the actions set forth herein.

59. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of VeriFone's securities in an effort to maintain artificially high market prices for VeriFone's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

60. Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of VeriFone as specified herein.

61. Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of VeriFone's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about VeriFone and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set

forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of VeriFone's securities during the Class Period.

62. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing VeriFone's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by overstatements and misstatements of VeriFone's financial condition throughout the Class Period, if the Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false and misleading.

63. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of VeriFone's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of VeriFone's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by the Defendants during the Class Period, Plaintiff and the other members of the Class acquired VeriFone common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

64. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of VeriFone, the Individual Defendants had knowledge of the details of VeriFone's internal affairs.

65. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of VeriFone. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to VeriFone's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of VeriFone securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning VeriFone's business and financial condition which were concealed by defendants. Plaintiff and the other members of the Class purchased or otherwise acquired VeriFone securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

66. During the Class Period, VeriFone securities were traded on an active and efficient market. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding VeriFone's financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their VeriFone securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

67. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of VeriFone's securities during the Class Period.

68. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**

69. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

70. The Individual Defendants acted as controlling persons of VeriFone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of VeriFone's operations and/or intimate knowledge of the false financial statements filed by VeriFone with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of VeriFone, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of VeriFone's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71. In particular, each Individual Defendant had direct and supervisory involvement in the day-to-day operations of VeriFone and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72. As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

73. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of VeriFone common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all claims asserted herein.

DATED: April 23, 2013

**GREEN & NOBLIN, P.C.**

By: /s/ Robert S. Green
Robert S. Green

James Robert Noblin
Lesley E. Weaver
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Peter Safirstein
**MORGAN & MORGAN, P.C.**
28 W. 44th St., Suite 2001
New York, NY 10036
Telephone: (212) 564-1637
Facsimile: (212) 564-1807
Email: psafirstein@MorganSecLaw.com

Attorneys for Plaintiff

**CERTIFICATION OF PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

Brian Bland ("Plaintiff") declares:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Date | Purchase/Sale | Quantity | Price per share |
|---|---|---|---|
| | | | |
| 11/27/12 | Purchase | 50 | 31.0499 |

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of the Certification except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed this 21 day of March, 2013

Brian Bland